Order Form Rev 06/2012)

# United State District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Judge James B. Zagel | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 12 cv 2548 | **DATE** | November 14, 2012 |
| **CASE TITLE** | HARRIS v. PFISTER | | |

**DOCKET ENTRY TEXT:**

The petition for a writ of habeas corpus is DENIED.

### STATEMENT

Before the Court is a petition for a writ of habeas corpus. For the following reasons, the petition is DENIED.

Facts

Frederick Harris was found guilty, by a jury, of aggravated robbery, aggravated battery on a public way, and aggravated battery of a peace officer. Petitioner was sentenced to 35 years' imprisonment. The recitation of the facts of the case comes (almost verbatim) from the opinion of the Appellate Court on direct appeal.

Mary Breitenecker testified that between 1 and 3 p.m. on May 25, 2003, she was walking with her 17-month-old daughter in a stroller towards her home located on the 2900 block of North Burling near Diversey and Halsted. Petitioner was following her. As she arrived at her house, Petitioner ran at her and after a brief struggle, took her purse. She pursued Petitioner until she realized her baby stroller was rolling in the street, whereupon she returned to the stroller. Mary suffered a sprained finger during the struggle.

Frank Slepicka, Mary's neighbor, heard screaming and ran out to the street from his backyard, where Mary reported what happened. Frank searched the area for Petitioner when he saw Mark Steinke from the neighborhood stopping a bus on south Halsted. As Frank approached, he saw Petitioner, who was carrying a purse, bolt from behind the bus and run away. Frank saw Petitioner wearing an orange t-shirt under a white basketball jersey with the number eight on the back. Frank continued pursuit.

Mark Steinke testified that he was in his house when he heard screaming. He looked out the window to see Mary pointing at Petitioner. Mark noticed Petitioner was wearing a white New York Knicks jersey over an orange t-shirt with the number eight on the back. Mark pursued Petitioner onto a bus on Halsted. Petitioner refused to hand the purse over when asked, and Mark exited the bus to search for a police officer. Moments later, Petitioner fled out of the rear door. Mark pursued Petitioner through an alley where he entered a gated stairwell which Mark shut and held closed. Petitioner charged at the gate unsuccessfully three times, and at one point motioned as if reaching for a gun. Mark moved out of defendant's line of sight, but was still able to hold the gate shut and eventually wedged a bicycle rack against the gate to hold Petitioner until the police arrived.

Officer John O'Brien testified that around 2:30 p.m. that day, he responded to a call that an armed robbery had occurred. Upon arriving, O'Brien and Officer Hazlett entered the stairwell where they found Petitioner, who, by then, was not wearing a shirt. O'Brien, after determining Petitioner was not armed, handcuffed Petitioner's left hand. Petitioner then turned and punched O'Brien on the side of his head twice and kicked him, knocking him down. Petitioner attempted to flee but O'Brien maintained a hold on the handcuffs, causing Petitioner to fall and hit his head. Officer Hazlett moved in to assist, but Petitioner fought him. The two officers were eventually able to arrest Petitioner.

The jury found defendant guilty of aggravated robbery, aggravated battery in a public way, and aggravated battery of a peace officer. There was a hearing before sentencing was imposed.

The judge sentenced defendant to a total term of 35 years' imprisonment, consisting of 30 years' imprisonment for aggravated robbery, 5 years set to run concurrently for aggravated battery on a public way, and 5 years set to run consecutively for aggravated battery of a peace officer.

Analysis

Petitioner seeks a writ of habeas corpus. He raises several issues:

1. The trial judge misapplied the state speedy trial statute

2. Appellate counsel was ineffective for failing to raise the speedy trial issue

3. Trial counsel was ineffective at pretrial motion state for lack of vigor

4. The trial judge should have disbelieved police officers on suppression issues

5. The trial judge refused to appoint a new lawyer to replace the assistant public defender—thus forcing petitioner to represent himself

6. The prosecutor knowingly presented perjured testimony, made arguments not supported by evidence and improperly referred to petitioner's failure to testify in his own defense.

Petitioner did not raise the third, fourth and sixth issues on direct appeal where he challenged only the heavy sentence he received. He did raise them in his post-conviction petition but these claims were held to be forfeit for the failure to raise them earlier. There is no reason to override the decision of the post-conviction court. Not one of these claims were raised on appeal and the record of the trial gave no support to the claims; at least one is not a claim at all but an assertion that the lawyer should have tried harder or spoke more forcefully. The Appellate Court on direct appeal could have considered each of these issues. It is possible that Court might have remanded for further hearings or held that the claims could be raised in post-conviction but it was not asked to do so. Petitioner prepared and attempted to file his own pro se brief on appeal (the Appellate Court denied him the right to do so). It is telling that he did not raise any of these claims in that brief; his brief raised only the speedy trial issue. This case was one with compelling evidence to support a verdict of guilty and, while a finder of fact could have disbelieved a variety of witnesses, there is nothing in the record to support a claim of actual innocence and nothing in the papers filed here that would constitute new reliable evidence to show by a preponderance of the evidence that no reasonable juror would have found him guilty. *Schlup v. Delo,* 513 U.S. 298 (1995). Petitioner's claim is that, in his personal opinion, prosecution witnesses should not have been believed. I note that at sentencing petitioner said "I let

you know that what I did was wrong. I snatched that lady's purse" and "To take advantage of the woman like that, to take her purse, I should have taken nothing from nobody at all…That was wrong. I was wrong for that." Such statements are not consistent with claims of actual innocence. *See Payne v. Brown,* 662 F.3d 825, 830 (7th Cir.).

It is fair to say that petitioner's conduct preceding trial and during trial would give reason to believe he was obstructive. Within two months of arrest he was represented by an assistant public defender, Richard Paull. A month later he asked for a new attorney because, he claimed, Paull lied to him about probation eligibility under the TASC program. The trial judge informed him that Paull was correct that he was not eligible for probation. A month or so after that Petitioner again complained about the same advice. The judge told him he should listen to Paull even though Petitioner might not like what he was being told. A couple of weeks after this Petitioner refused to speak with Paull before the hearing and wanted a new lawyer. After listening to Paull the judge told Petitioner that Paull was being effective and that disagreeing with his lawyer was not enough reason to get a new lawyer. Later that day Petitioner announced he intended to testify on his own behalf. Paull told the court that presenting such testimony would violate his duty to the court. The trial judge gave Paull time to talk it over with Petitioner.

A week later in court, Paull told the judge it would be best for him to transfer the case to Christina Yi another assistant public defender. Petitioner objected because he had "heard hearsay" that Yi was "friends with the State's Attorney." He wanted outside counsel. The judge said no. Petitioner said he would not accept appointed counsel from the Public Defender, had no plans to hire private counsel and would not represent himself. The trial judge informed petitioner that his only choices were the public defender, hiring a private attorney or representing himself. This was October 10, 2003.

On December 2, 2003, Petitioner said he was happy with Yi. Motions to suppress eyewitness testimony and physical evidence were filed. They were heard on January 23, 2004. Petitioner testified that on the day of the offense he was on the sidewalk minding his own business when two police officers stopped him and, after a brief conversation began beating him, then cuffed him and threw him (wearing a blue shirt) into the back of a police car. All this was a few yards from the intersection of Halsted and Diversey, a busy intersection. This attack was followed by presenting him to the victim of the offense in a suggestive one on one identification procedure in which they held a basketball jersey up to petitioner's chest. The police officers testified as they would later do at trial. Petitioner was in fact struck but this was in self-defense and to effect an arrest. There was an on-the-scene identification but it was made not only by the victim but also by the two men who chased after him. The trial judge found petitioner "not a credible witness". The suppression motions were denied.

On February 19, 2004, Petitioner told the court he wanted to dismiss Yi as his counsel for not answering his phone calls, and refusing to seek reconsideration of the suppression motions which, he believed, she filed merely to pacify him. He still told the judge the police were lying. The judge disagreed and said that nothing petitioner brought to his attention thus far would cause him to change his mind. At the end of the hearing Petitioner said he would represent himself. The trial judge gave a lengthy and correct warning about all the bad things that could happen to him if he was his own lawyer and not represented by a trained defender. The trial judge gave repeated and repetitive warnings none of which petitioner accepted. As to the police he insisted they lied and would "get caught lying and that is my case."

At trial in May, Petitioner called no witness in his own behalf and was found guilty. Post-trial motions attacked Yi. These were unpersuasive and the judge noted "This is one of the strongest cases that I have

seen in the many years that I have sat here…there were several eyewitnesses…You were clearly guilty of what you have been convicted of.. That's really why I think that it wouldn't have mattered if you represented yourself or whether you had dozens of lawyers.  The evidence was overwhelming."

At sentencing, petitioner now wanted a lawyer and now accepted Yi.  Yi refused to file a motion to disqualify the judge on the basis of bias; the judge allowed it as a pro se filing.  Another judge (as is the practice in Cook County) heard the motion and denied it.

On appeal the petitioner, unsurprisingly, wanted to fire his appointed counsel and wanted to file his own brief on the speedy trial issue.  He lost on both points.  He did file a petition for leave to appeal in the Supreme Court of Illinois which was denied in January of 2007.  He never filed for certiorari in the United States Supreme Court.

The post-conviction petition was filed in June of 2007.  He was appointed counsel whom he fired because he believed "nobody could say what I could say better than myself and that's the bottom line."  His petition said Yi did not litigate his motions strongly enough, the trial judge was biased because he believed the officers, the statutory right of speedy trial was not honored, the judge should have appointed counsel to replace Yi and refused to appoint standby counsel.  Petitioner also complained that there were too many security officers in the courtroom; all of the witnesses committed perjury; the prosecutor erred by arguing the witnesses were credible, commenting on Petitioner's failure to call witnesses or testify himself and by misstating the law; and, finally, the appellate counsel was ineffective for failing to raise these issues on appeal.  Petitioner lost on grounds of waiver on direct appeal and, on the alternative ground, that all the claims were frivolous.

The denial of the post-conviction petition was appealed basically on the same grounds adding only a claim about use of Petitioner's prior convictions.  In the Appellate Court Petitioner argued that the post-conviction judge should have held an evidentiary hearing.  The Appellate Court found all of the claims save two were forfeit for the failure to raise them on direct appeal—ineffective assistance of counsel on appeal and his waiver of counsel claims.  The Appellate Court found the all claims including the non-forfeited two were frivolous.  The Supreme Court denied the petition for leave to appeal.  Again certiorari was not sought.

The claims (forfeited or not) are without merit.  The speedy trial claim is exceptionally pointless.  It attempts to convert an asserted violation of a state statute into a constitutional claim.  Read carefully petitioner does not actually say that he was denied a speedy trial under the Constitution.  Rather he says he was denied due process because the trial judge did not follow the state statute.  Petitioner clearly recognizes that he cannot secure a federal writ of habeas corpus because state law was violated.  Characterizing a failure to follow a state law is not itself a violation of the due process clause.  *Reed v. Clark,* 984 F.2d 209 (7th Cir. 1993).  In any event, the Appellate Court decided (and its judgment on this point is binding on this court) that the trial judge did not improperly apply state law.  Appellate counsel for Petitioner was not ineffective for failing to raise it.

Trial counsel was not ineffective in handling the motions to suppress.  The evidence on the motion to suppress was strong.  There were inherent weaknesses in the testimony of petitioner.  The claim that there were unused lines of attack on police witnesses is not specific.  The Appellate Court noted that "defense counsel conducted a vigorous cross-examination of Officer O'Brien…attempted to impeach him regarding information the officer testified to at the hearing [and] made timely objections throughout the hearing."  Petitioner disagrees with defense counsel's tactics but it is clear from his own pleadings here that his own judgment of legal strategy is flawed.  He was convicted on the testimony of five witnesses, only three of whom were police officers.  He was fighting a case he did not have the judgment to see then or now that he

could not win.  Yi's work was diligent and the state courts correctly concluded her representation of Petitioner was effective.  A prime example of Petitioner's ineffective criticism of counsel was his contention that she conceded probable cause to arrest.  She did not do so.  She made a proper argument that even if there was probable cause, then the eyewitness identifications should still be suppressed.  She preserved an alternative defense argument.  The Petitioner's plea for relief is based on his unjustified premise that an effective defense counsel is a defense counsel who wins the case and a guilty verdict is proof of ineffectiveness.

The trial judge disbelieved Petitioner, who contradicted the evidence of other witnesses.  Here too Petitioner operates on the premise that any judge who rules against him is unfair and denies due process.  Looking at the evidence in the motions to suppress, the judge was well within his rights to find that O'Brien was truthful on the important issues and Petitioner was not.  The refusal to suppress evidence was not contrary to Supreme Court law.  If there were discrepancies in O'Brien's testimony it was the duty of the trial judge to decide the degree to which this affected credibility.  Allegations, unspecific ones at that, of "inconsistencies" do not justify overturning a judge's determination that a witness was credible.  Indeed, the one inconsistency cited about O'Brien's observation of petitioner's flight up stairs depends on petitioner misstating O'Brien's testimony.  Moreover, the petitioner's own testimony about his arrest seems improbable on its face.  In any event the evidentiary foundations of a Fourth Amendment claim cannot be relitigated in habeas cases. *Stone v. Powell,* 428 U.S. 465 (1976)

The complaint that Petitioner should not have had to waive counsel is a nonstarter.  He claimed he needed new counsel because his current counsel was grossly incompetent.   She was not, the state court found.   The cautions given to petitioner before he waived counsel were, the Appellate Court correctly found, adequate and petitioner did knowingly and voluntarily waived his right to counsel.  Petitioner had a GED and some college courses and, from his speech at trial and his writings in this case he was quite capable of knowingly and intelligently waiving his right to counsel   The best that can be said for Petitioner is that he had strategic disagreements with his lawyer but none of those disagreements touched on the three issues that a defendant is entitled to decide for himself and no claim that on any of those issues his lawyer failed to abide by his will.  Ordinary strategic decisions are to be made by counsel, not by defendant and counsel does not have to follow the strategic dictates of his or her client.  When disagreements occur and defendant cannot abide them, then defendant can choose as petitioner did to represent himself.   That his choice was between keeping current counsel and proceeding pro se did not violate his rights. *United States v. Hoskins,* 243 F.3d 407 (7th Cir. 2001);  *Oimen v. McCaughtry,* 130 F.3d 809 (7th Cir. 1997).

The claims about the conduct of the prosecutor were rejected by the state courts and forfeited as well.  The validity of the claims are based on the premise that everything the petitioner says about the events which led to his arrest are true and that the prosecutors knew that contradictory testimony of witnesses was perjured.  These propositions are not supported by evidence.  A number of witnesses testified that Petitioner was shirtless when arrested.  Petitioner produced a photo of him wearing a blue shirt but the photo's provenance is not established.  O'Brien was not present when the photo was later taken and his testimony that Petitioner was shirtless is not refuted by the photo.  Petitioner should not have relied on the photo in the first place because the prosecutor properly argued that if he was wearing it when he said he was arrested, the shirt would likely have been bloody and the shirt was not bloody.  The prosecutor is entitled to comment on flaws in the opening statement made by petitioner.  The Appellate Court was well within its rights to reject the complaint about the prosecutor and the blue shirt.  Nor was it improper for the prosecutor to draw an inference that the blue shirt was given to Petitioner after arrest.

Petitioner used his opening statement to declare his innocence and the racial motivation of the police.  He relied on his own memory of events to cross witnesses and, as Respondent correctly notes, used his

questions to give unsworn testimony on his own behalf. His closing argument was an attempt to put evidence into the record despite the fact that he was admonished by the court only to comment on evidence already in the record. Indeed, in his closing, he said "I can't talk about the details of my arrest because I chose not to testify, <u>because I can't question myself, so all I can say…</u>" (emphasis added). The prosecutor objected stating [petitioner] had a right to testify." In closing the prosecutor explained the difference between testimony and statements made from someplace other than the witness stand. He explained the defendant's right to testify and the right to argue innocence but opening statements are not evidence. The Appellate Court upheld the prosecutor's conduct and there is nothing in the Supreme Court jurisprudence that prevents a prosecutor or a court from making it clear to the jury that unsworn statements of a defendant are not evidence and, if a defendant wants to make them evidence, he has every right to take the stand in his own defense. The prosecutor did not say that Petitioner's refusal to take the stand was itself evidence of his guilt.

There is not a single issue that merits a certificate of appealability. The state courts dealt with these issues correctly. For the foregoing reasons, the petition for a writ of habeas corpus is DENIED.

---

[1] The aggravation/mitigation evidence was extensive but I remit it to this footnote because the sentence itself is not directly attacked in the petition.

During sentencing, the State called five prison officials in aggravation. First was Sergeant Anthony Salemi, who testified that on October 31, 2004, he confronted defendant for handing a note to a correctional officer stating that he had emotional feelings for her. Defendant also told Salemi that, "I'm from Division 9. We fuck the police up over there." Defendant was disciplined for verbally disrespecting a staff member, using obscene language to the staff, and intimidation through the use of language.

    Next, Officer Callas testified that on February 22, 2003, defendant refused to return to his cell until he spoke to the sergeant. The sergeant on duty subsequently arrived and locked defendant into his cell. Defendant was disciplined for refusing to return to his cell.

    Deputy Sheriff Joseph Marrotta then testified that on April 9, 2004, while returning to this cell after breakfast, defendant forced his way into the cell of another inmate, Rueben Gonzalez. Defendant picked up a pair of shoes, stating that they were his, and refused to put the shoes down and exit the cell when asked multiple times. Defendant grabbed Marrotta and called for another inmate, who was standing on the outside of the cell, to jump on Marrotta's back. Marrotta was able to keep defendant restrained until backup officers arrived. Defendant was charged with three infractions: refusing to return to his cell, necessitating the use of force, and physical assault and battery.

    David Moore of the Cook County Department of Corrections testified that on December 19, 2003, defendant was involved in a fist-fight with his cell-mate and later disciplined for it.

    The last witness for the State was Officer Kolas, who testified that on May 31, 2004, defendant was involved in an altercation with three other detainees, one of whom who was confined to a wheelchair, in an infirmary concerning control of a television. Later, on June 9, 2004, defendant asked for more medication than he was allowed and became verbally abusive with the nurse. Defendant was disciplined for both infractions.

    The State then submitted a photograph of defendant from two months prior to the events on May 25, 2003. The photograph shows defendant wearing the same orange and white New York Knicks jersey that the witnesses during trial testified to seeing him wear on May 25, 2003, and which defendant claimed was planted by the police.

    The victim impact statement of Mary was then read, which described how she no longer felt safe in her neighborhood as a result of the robbery and no longer feels comfortable allowing her child to play in front of her house.

Order Form Rev 06/2012)

---

Wiley Harris, defendant's brother, testified for defendant in mitigation. Wiley stated that defendant had limited contact with his father, who was abusive towards defendant's mother. He testified that defendant has a drug addiction problem and that defendant indicated that he wanted to quit several times. Wiley also testified that he (Wiley) used to have drug problem as well but is now sober, and believes that defendant can do the same.